DAVID ALLEN (SBN 87193)
DAVID ALLEN & ASSOCIATES
5230 Folsom Boulevard
Sacramento, California 95819
(916) 455-4800 Telephone
(916) 451-5687 Facsimile

Attorneys for Plaintiff
ANDREA ARCH

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SACRAMENTO

ANDREA ARCH,

    Plaintiff,

v.

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON DBA LIBERTY MUTUAL,
and DOES 1 to 100,

    Defendants.

Case No.

**COMPLAINT FOR DAMAGES**
1. **BREACH OF CONTRACT**
2. **BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**
3. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
4. **ATTORNEY FEES & COSTS**

**WITH REQUEST FOR JURY TRIAL**

### THE PARTIES AND THEIR RELATIONSHIPS

1.    At all times mentioned herein, Plaintiff is informed and believe that Defendant, LIBERTY LIFE ASSURANCE COMPANY OF BOSTON dba LIBERTY MUTUAL ("Liberty"), was and is a business entity, forms unknown, authorized to transact, and transacting, business in California and maintain places of business in the State of California. LIBERTY LIFE ASSURANCE COMPANY OF BOSTON dba LIBERTY MUTUAL is authorized to transact, and is transacting, business in California as a disability insurer. Hereinafter the term "Liberty" shall be used to designate Defendant, LIBERTY LIFE ASSURANCE COMPANY OF BOSTON dba LIBERTY MUTUAL in all forms in which it existed or exists.

2.    The true names and capacities, whether individual, corporate, associate or otherwise are presently unknown to Plaintiff and are designated herein as DOES 1 through 100.

1
**COMPLAINT FOR DAMAGES**

3. This action seeks damages for the repeated termination of total disability benefits under a long term disability insurance plan. Liberty issued the policy ("plan") providing Long Term Disability benefits to Plaintiff, ANDREA ARCH to the University of California, Plaintiff's employer.

4. At all times herein mentioned, Plaintiff has been a participant in and a beneficiary of an employee benefit plan written by Defendant Liberty which offered long term disability benefits to the Plaintiff. Plaintiff was and presently is a beneficiary of the long term disability Plan.

5. Liberty was the Plan Administrator for the University of California's Short Term Disability and Supplemental Disability Plans. Liberty did and continues to do business within the Eastern District of California. By the terms of the policy, Defendants undertook and agreed to pay Plaintiff should she become unable to work due to total disability until she reaches retirement age.

6. Plaintiff performed all acts required of her under the terms of the policy.

7. Plaintiff is informed and believes, and based upon such information and belief, alleges that Defendant Liberty is a corporation charged with certain administration responsibilities under the Plan..

8. Plaintiff is informed and believes, and based upon such information and belief, alleges that Defendant Liberty is a corporation acting as the agent for University of California, and vice versa; that Defendant is charged with certain claims-handling responsibilities under the Plan; that Defendant's responsibilities extend at least in part to the misconduct alleged below.

9. Unless otherwise indicated, each Defendant herein is sued as the agent, of every other defendant, and is alleged to have been acting within the course and scope of said agency, with the knowledge and/or consent of said co-defendants. Moreover, Plaintiff is informed and believes, and based upon such information and belief, alleges that each defendant has authorized or ratified the wrongful activities of the remaining defendants,

10. Plaintiff, ANDREA ARCH, was timely enrolled in the Plan, and the required

contributions were made by her employer on her behalf as soon as the benefits became available to her during her employment. The plan was in affect at the time of Plaintiff's permanently disabling events as herein described.

## DISABILITY

11. On or about July 23, 2012, when the policy was in full force and affect, Plaintiff became disabled. Plaintiff suffers chronic pain stemming from cervical radiculopathy due to foraminal stenosis, and lumbar degenerative disk disease.

12. Plaintiff filed a timely claim for disability benefits under the Plan with Defendant Liberty.

13. Liberty approved and paid short term disability beginning July 31, 2012.

14. Liberty approved Plaintiff's application for Supplemental Disability effective July 1, 2012.

6. Total Disability is defined by the Plan:

""Total Disability" or "Totally Disabled" with respect to Supplemental Disability coverage, short term period, means you will be considered Totally Disabled when Liberty determines that all of these conditions are met:

For the first 12 months of Supplemental Disability benefits-
1. Due to a medically determinable physical or mental impairment resulting from a bodily Injury or disease, you are completely unable to perform any and every duty pertaining to your own occupation;
2. You are not working at any occupation for wage or profit; and
3. You are under the direct and continuous care of a Physician.

From the 13th month of benefits onward:
1.     Due to a medically determinable physical impairment or mental impairment resulting from a bodily injury or disease, the Covered Person is completely unable to perform the material and substantial duties of any occupation for which he/she is reasonably fitted by education, training or experience;
2.     The Covered Person is not working at any occupation for wage or profit; and
3.     The Covered Person is under the direct and continuous care of a Physician."

15. On or about December 7, 2012 the University of California Retirement Plan (UCRP) approved Plaintiff's application for disability effective July 1, 2012.

"According the CD Retirement Plan Document, your eligibility for disability income benefits is based on your inability to perform substantial gainful activity due to a medical incapacity. During the first year of eligibility you must be unable

to perform substantial gainful activity which could result in an income of 50% or more of your final University salary. After the first year, substantial gainful activity is defined as activity which could result in earnings that exceed the Social Security Administration's annually published dollar amount guidelines."

16. On or about November 3, 2014 the Social Security Administration found Plaintiff totally disabled.

17. The Social Security Act defines "Disabled" generally as the inability to engage in **any** substantial gainful activity by reason of any medically determined physical or mental impairment which can be expected to result in death or which has lasted, or is expected to last, for a continuous period of not less than twelve months.

18. The Social Security Administration considers Plaintiff capable of sedentary work. However the arm restrictions imposed upon her sedentary ability result in disability:

"Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs which exist in significant numbers in the national economy that the claimant can perform."

19. The Social Security Administration found Plaintiff disabled beginning January 23, 2012.

## PAYMENTS

20. Liberty began making Supplemental Disability payments July 23, 2012.

21. Over the next two years, Liberty terminated Plaintiff's benefits three times prior to her Award of Social Security benefits November 3, 2014.

22. Each time Liberty terminated benefits, Plaintiff scrambled to pay her bills. She borrowed money to avoid losing her home.

23. Each time Liberty terminated benefits, Plaintiff appealed. She told Liberty of the financial hardship it caused. Two times benefits were reinstated. On August 19, 2014 Liberty terminated benefits a third time. Plaintiff's appeal, which included her Fully Favorable Social Security Disability Award, was denied.

24. Despite denying further benefits, Liberty offset her past monthly benefit by her Social Security benefit and demanded repayment of $23,174.44 when Plaintiff's Social Security was approved.

1    Plaintiff repaid the requested amount.

## BENEFIT REDUCTIONS

25. Plaintiff's "final University salary" is calculated as $3,536.67 per month.

26. Plaintiff's monthly benefit from Liberty is the lesser of 50% of her salary or 70% of her salary minus any offsets. If offsets exceed the benefit value, a minimum payment of $100.00 is due.

27. UCRP pays a monthly benefit of $1,307.87. Liberty offsets its benefit amount by this payment.

28. The Social Security Administration pays a monthly benefit of $1,404. Liberty offsets its benefit amount by this payment.

29. As a result of the two offsets, Liberty only owes Plaintiff the minimum payment $100.00 per month. Over the life of the claim, paid to retirement at 65 (9/19/2028), this would equate to $19,100.00.

30. As of the date of this filing, after offsets, Liberty paid benefits in the total amount of $3,100.00.

## ANTAGONISTIC TACTICS

31. Liberty opened Plaintiff's claim February 2, 2012.

32. On April 19, 2012 the following note was entered into Liberty's computer:

ALTHOUGH CLAIM REMAINS MEDICALLY SUPPORTED WITH R&L&#39;S OF NO LIFTING OVER 5 LBS. THERE ARE INCONSISTENCIES BETWEEN R&L&#39;S AND ACTIVITIES QUESTIONAIRE [sic] IN THAT EE INDICATES SHE IS ABLE TO DO LAUNDRY AND DO HER OWN GROCERY SHOPPING. CLAIM WILL NOT BE FWD TO SEVERE AT THIS TIME. RECOMMEND STD CM CONTINUE TO MONITOR CLAIM AND PURSUE SURVEILLANCE TO GET A BETTER UNDERSTANDING OF EE&#39;S IMPAIRMENT.

33. On April 20, 2012 the claim was referred to special investigations "SIU" for an activity check. The check revealed no activity.

34. During May, 2012 Plaintiff was subject to ten days of surveillance. On December 21,

|  |  |
|---|---|
|  | 2012 the claim was again referred for five more days of surveillance. The surveillance failed to uncover Plaintiff performing any tasks outside the range of her stated limitations. |
| 35. | Liberty paid $8,019 for the fifteen days of surveillance. |
| 36. | An Independent Medical Examination "IME" was scheduled for February 22, 2013. Plaintiff's recollection is the physical examination lasted approximately ten minutes. |
| 37. | Liberty provided no invoice for the amount it paid for the IME. |
| 38. | Liberty received the IME report on March 14, 2013. |
| 39. | Plaintiff's claim was terminated as of April 1, 2013. |
| 40. | Plaintiff appealed her termination of benefits May 17, 2013. Plaintiff's appeal was sent to a nurse for review. The nurse's review notes dated June 3, 2013 state that **permanent restrictions are reasonable**. (Emphasis added.) Plaintiff's claim was recommended to be reopened June 5, 2013. Further investigation was also recommended. |
| 41. | On November 25, 2013, despite consistent support from her treating doctor, the following note was entered by Liberty: |

REVIEWED CLAIM FOR M1 QCM REVIEW - EE IS A 50 YR OLD FORMER ADMIN. ASST. WHO IS OUT OF WORK DUE TO CHRONIC PAIN DISORDER, CERVICAL NEURALGIC HEADACHE. THROUGHOUT HX OF CLAIM THERE IS DISCREPANT OPINIONS REGARDING MEDICALLY SUPPORTED R/LS. CURRENT DIRECTION IS FOR DCM TO UPDATED MEDICAL RECORDS IN DEC. IF UPDATED RECORDS DO NOT PROVIDE CLARITY ON EE&#39;S MEDICALLY SUPPORTED R/LS THEN RECOMMEND A 2ND IME TO FULLY CLARIFY MEDICALLY SUPPORTED FUNCTION.

| 42. | On January 22, 2014 a second IME was requested, and then postponed. Instead a peer review was scheduled and completed. Again file closure was recommended May 28, 2014. |
|---|---|
| 43. | Liberty provided no invoice for the amount it paid for the Peer Review. |
| 44. | Plaintiff sent and appeal July 2, 2014. On July 3, 2014 Liberty received Plaintiff's request for appeal. It **immediately** recommended the claim be reopened. |

"DCM RECOMMENDS REOPENING CLAIM TO FURTHER INVESTIGATE R/L S. DCM TO REFER FILE FOR PM&R IME FOR FINAL DETERMINATION OF EE S FUNCTIONAL CAPACITY AND ELIGIBILITY TO RECEIVE DISABILITY BENEFITS UNDER THE UC LTD POLICY PROVISION TD ANY OCC." 07/03/2013

45. The previously postponed second IME was then scheduled. It took place August 1, 2014. Again, Plaintiff's recollection is that the physical examination lasted approximately ten minutes.
46. Liberty provided no invoice for the amount it paid for the second IME.
47. Liberty recommended claim closure August 19, 2014 following receipt of the second IME report.
48. From 2012 through 2014 Liberty paid for four vocational consultant to review Plaintiff's file.  The total payments for the resulting reports was $719.32.
49. Plaintiff appealed this third claim closure October 6, 2014.  She submitted her Fully Favorable Social Security Award, and repaid her Overpayment.
50. Liberty made its final administrative denial of benefits by an undated letter, thereby continuing its pattern of bad faith.  The record, taken as a whole, reflects that Liberty acted as an adversary bent on denying Andrea Arch's claim.  It behaved in a manner oblivious to its fiduciary obligations as administrator of the LTD Plan.  See *Siebert v. Standard Ins. Co. Group Long-Term Disability Policy*, 220 F. Supp. 2d 1128, 1135 (C.D. Cal. 2002)
51. Plaintiff believes and thereon alleges the motivation for Liberty's adversarial actions lay in the knowledge that the small benefit at issue would create a difficulty for Ms. Arch to find counsel to pursue litigation.
52. Plaintiff retained counsel to pursue Liberty for its actions and failures.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT: PLAN BENEFITS

PLAINTIFF ANDREA ARCH, FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS ALLEGES:

53. Plaintiff refers to Paragraphs1 though 52 above and incorporates those paragraphs as though set forth in full in this Cause of Action.
54. That Plaintiff was enrolled under the plan which at all relevant times was in full force and

7
**COMPLAINT FOR DAMAGES**

effect. The terms and conditions of the plan at issue provided the Plaintiff would be covered for disability due to sickness or injury when she could no longer perform the material and substantial duties of her occupation while under a doctor's care. The plan and its promised benefits were offered to Plaintiff as part of her compensation in exchange for providing service to University of California. The plan provided for both total and partial disability benefits. Plaintiff's claim for total disability benefits is compelling. However, Defendants failed to offer even partial disability benefits.

55. Medical records following the onset of her disability clearly indicated that Plaintiff was unable to resume her duties for the University of California.

56. Plaintiff performed all the conditions on her part which the plan required her to perform.

57. On or about January 23, 2012, Plaintiff became disabled and timely submitted a claim for disability benefits. Plaintiff's claim was approved, then later repeatedly denied. Plaintiff repeatedly timely appealed her denials.

58. Defendants breached the terms of the plan and its contract with Plaintiff by continually terminating payments for Plaintiff's claim for disability benefits.

59. As a direct and legal result of the breach of contract by Defendants as herein alleged, Plaintiff has suffered and will continue to suffer in the future damages under the terms of the policy, plus interest, for a total amount to be determined at the time of trial.

60. Defendants have unreasonably, arbitrarily and capriciously breached the obligations placed upon them by the plan issued by Defendants. Defendants have unreasonably, arbitrarily and capriciously withheld from Plaintiff the benefits promised by the plan.

61. Plaintiff suffered damages legally (proximately) caused by Defendants' breach of the agreement as follows:

A. $100.00 monthly benefit payment.

B.. Emotional Distress.

WHEREFORE, Plaintiff prays for a judgment against Defendants, and each of them, as set forth below.

## SECOND CAUSE OF ACTION

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

62. Plaintiff hereby incorporates, as though fully set forth, paragraphs 1 through 61, as though further alleges against Liberty, as follows:

63. The law implies in every insurance policy, and imposes on Defendants, a duty of good faith and fair dealing.

64. Defendants, and each of them, have breached their duty of good faith and fair dealing owed to Plaintiff in the following respects:

    a. Failing to pay disability benefits to plaintiff at a time when defendant knew plaintiff was entitled to said benefits under the terms of the Policy;

    b. Delaying payment of disability benefit while knowing plaintiff's claim for benefits under the Policy to be valid;

    c. Failing to pay plaintiff disability benefits pursuant to Plaintiff's claim at a time when Defendant had insufficient information within its possession to justify said action and in fact, had information within their possession directly opposing said action;

    d. Not attempting in good faith to reasonably investigate, evaluate and to effectuate a prompt, fair and equitable settlement of plaintiff's claim for disability benefits in which liability had become reasonably clear;

    e. Failing to provide a reasonable explanation of the basis relied upon in the Policy, in relation to the applicable facts, for the denial of plaintiff's claim for disability benefit;

    f. Adopting a business practice of ignoring applicable California law on the issues of "total disability", "occupation" and related insurance terms and claims practices, including but not limited to resolving ambiguities and doubts against claimants;

    h. Concentrating on information, out of context, to deny claims without seeking out and/or giving weight to information that would support a claim;

    h. Misrepresenting the substance of relevant evidence in denying the claim;

    i. Failing to provide explanation of all coverages and benefits available under the terms of the policies and applicable law;

   j. Failing to assist the plaintiff in receiving all benefits to which he is entitled under the terms of the policies, and intentionally concealing the type of benefits available under the terms of the policies and applicable law;

   k. Interpreting all facts and coverages against the insured, and placing the financial interests of the insurer above those of the insured;

   l. Compelling plaintiff to secure the services of an attorney and commence litigation in order to recover the amount due under the policies.

65. Plaintiff is informed and believes, and thereon alleges, that Defendants have breached their duty of good faith and fair dealing owed to Plaintiff by other acts or omissions of which plaintiff is presently unaware. Plaintiff will seek leave of court to amend this complaint at such time as plaintiff discovers the other acts or omissions of said defendant constituting such breach.

66. As a legal result of the aforementioned wrongful conduct of defendant, Plaintiff has suffered, and will continue to suffer in the future, damages under the Policy, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

67. As a further legal result of the aforementioned wrongful conduct of defendant, plaintiff has suffered anxiety, worry, mental and emotional distress, and other incidental damages and out of pocket expenses, all to plaintiff's general damage in a sum to be determined at the time of trial.

68. Defendants' conduct described herein was intended by the defendant to cause injury to the plaintiff or was despicable conduct carried on by the defendant with a willful and conscious disregard of the rights of plaintiff, subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights, and was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention to deprive plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling plaintiff to punitive and exemplary damages in an amount

appropriate to punish or set an example of defendants.

## THIRD CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

69. Plaintiff refers to Paragraphs 1 though 68 above and incorporates those paragraphs as though set forth in full in this Cause of Action.

70. As a further and legal result of the unreasonable and bad faith conduct of defendant, plaintiff was compelled to retain legal counsel to obtain benefits due under the Policy and to commence litigation. Therefore, defendant is liable to plaintiff for attorney fees and costs reasonably necessary and incurred by plaintiff to obtain the policy benefits in a sum to be determined at the time of trial.

## FOURTH CAUSE OF ACTION
## FOR AN AWARD OF ATTORNEYS FEES AND COSTS AGAINST DEFENDANT

71. Plaintiff refers to Paragraphs 1 though 70 above and incorporates those paragraphs as though set forth in full in this Cause of Action.

72. As a further and legal result of the unreasonable and bad faith conduct of defendant, plaintiff was compelled to retain legal counsel to obtain benefits due under the Policy and to commence litigation. Therefore, defendant is liable to plaintiff for attorney fees and costs reasonably necessary and incurred by plaintiff to obtain the policy benefits in a sum to be determined at the time of trial.

WHEREFORE, plaintiff prays for judgment against defendants and each of them, as follows:

1. Damages to date of judgment for failure to provide full benefits under the Policy, plus interest, including prejudgment interest, and other economic and consequential damages, in a sum to be determined at the time of trial;

2. Past and future general damages for mental and emotional distress and other incidental damages in a sum to be determined at the time of trial;

11
COMPLAINT FOR DAMAGES

3. Punitive and exemplary damages in an amount appropriate to punish or set an example of defendants;

4. For attorneys' fees and expenses reasonably incurred by plaintiff to obtain the Policy benefits, and resulting from fraud, in a sum to be determined at the time of trial;

5. Pre-judgment interest at the appropriate legal rate;

6. Future special and general damages for breach of the implied covenant of good faith and fair dealing, including but not limited to the reasonable present value of future full total disability benefits;

7. For costs of suit incurred herein; and

8. For such other and further relief as the Court deems just and proper.

DATED: September 3, 2015                    Respectfully submitted,

                                             DAVID ALLEN & ASSOCIATES

                                             By _____
                                                DAVID ALLEN
                                                Attorney for Plaintiff
                                                ANDREA ARCH

**REQUEST FOR JURY TRIAL**

TO THE COURT ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Plaintiff, Andrea Arch, hereby demands a jury for the trial of her disability insurance claim.

DATED: September 3, 2015                    Respectfully submitted,

                                             DAVID ALLEN & ASSOCIATES

                                             By _____
                                                DAVID ALLEN
                                                Attorney for Plaintiff
                                                ANDREA ARCH